(No. 44779.—

THE COUNTY OF COOK *et al.*, Appellees, v. RICHARD B. OGILVIE, Governor, *et al.*, Appellants.

*Opinion filed January 28, 1972.*

RYAN, J., dissenting.

WILLIAM J. SCOTT, Attorney General, of Springfield, and JUSTIN A. STANLEY and WAYNE W. WHALEN, Special Assistant Attorneys General, of Chicago, (FRANCIS T. CROWE, BERNARD GENIS and HENRY CALDWELL, Assistant Attorneys General, of counsel,) for appellants.

EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JACK B. SCHMETTERER, First Assistant, VINCENT BENTIVENGA, Chief, Civil Division, and MERCER COOK, JAMES ROONEY and HENRY A. HAUSER, Assistant State's Attorneys, of counsel,) for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from the circuit court of Cook County challenging 1) the validity of a temporary restraining order prohibiting Governor Richard B. Ogilvie, and Edward Weaver, Director of the Illinois Department of Public Aid, appellants-defendants, hereinafter referred to as defendants, from performing any acts which prevent the prompt allocation and payment to the Cook County Department of Public Aid (CCDPA) of funds necessary to carry forth the General Assistance program for November, 1971; and 2) the validity of the preliminary injunction ordering the return of $21,000,000 previously transferred

from the General Assistance Fund (GA) to the Aid to Families with Dependent Children Fund (AFDC).

In addition, the defendants have sought leave to file an original proceeding, as petitioners, seeking a writ of *mandamus* ordering the plaintiff-respondent, David L. Daniel, Director of the Cook County Department of Public Aid to take all necessary action as directed by them to establish priorities among recipients and for the allocation and payment of the reduced funds available for General Assistance grants in Cook County.

All five welfare programs in Illinois are governed by the Illinois Public Aid Code. (Ill.Rev.Stat. 1969, ch. 23.) Of these five programs, three, Aid to the Aged, Blind or Disabled (art. III); Aid to Families with Dependent Children (art. IV); and Aid for Medical Assistance (art. V), are categorical programs which qualify for Federal funds in amounts equal to the State appropriations. Since Federal funds are available, Federal requirements must be met in order for individuals to participate. The remaining two programs, General Assistance and Local Aid to Medically Indigent, do not qualify for matching grants from the Federal government but are funded solely through State and local appropriations. Cook County administers the General Assistance program within the boundaries of the city of Chicago. The General Assistance programs in Cook County, outside Chicago, are administered by township supervisors. The requirements for these programs are enumerated in articles VI and VII of the Public Aid Code. The Code also establishes the office of Director of the Illinois Department of Public Aid who is responsible for the administration of said Code.

"An Act to Provide for the Ordinary, Contingent and Distributive Expenses of the Department of Public Aid" (Public Act 77–271) appropriated the funds necessary to implement and effectuate the provisions of the Illinois Public Aid Code. It provided over one billion dollars for

disbursement to the needy by specific line appropriations in each of the aforementioned five welfare programs, and for other expenses of the Department, for the fiscal year beginning July 1, 1971 and ending June 30, 1972.

The remaining funds so appropriated were not sufficient to meet the needs of all State welfare programs for the entire fiscal year up to the minimum requirements permitted each welfare recipient under the Public Aid Code and the Rules and Regulations of the Department of Public Aid (IDPA).

The Director of the Illinois Department then submitted a memorandum to the Governor suggesting that $21,000,000 be transferred from General Assistance and added to the Aid to Families with Dependent Children Fund. This transfer was approved and made in reliance upon a provision of Public Act 77—271 (Appropriation Act), hereinafter discussed.

For the month of November, 1971, the Cook County Director requested $9,637,754 for General Assistance which request was predicated upon the standards established by the Illinois Department. The Director of the Illinois Department notified him that only $3,000,000 would be available; an amount which admittedly was insufficient to accomplish the goals enumerated in section 1—1 of the Public Aid Code. In addition, the Director of the Illinois Department suggested that the Cook County Department remove from the General Assistance rolls all persons who would qualify for the categorical programs that are Federally funded, as well as all "single employables" who had qualified for General Assistance. Instead, the Cook County Director ordered reductions of 60% in all checks to be issued in November, 1971.

Action was filed in the circuit court of Cook County by the County of Cook, *et al.,* hereinafter referred to as plaintiffs, and after a hearing the court issued a temporary restraining order against the defendant directing the

Illinois Department to provide the Cook County Depart-
ment with the entire $9,637,754 requested for November,
1971. After further hearings, the court directed the
defendants to re-transfer the $21,000,000 diverted from
the General Assistance Fund. This appeal followed and
defendants have sought leave to file a petition for an
original action for *mandamus,* which, in part, seeks the
return of those funds in excess of $3,000,000 paid to the
Cook County Department under court order in November,
1971.

The defendants contend that the circuit court of Cook
County lacked jurisdiction of this action because section
26 of article IV of the 1870 constitution of Illinois
provided: "The State of Illinois shall never be made
defendant in any court of law or equity." (Section 4 of
article XIII of the constitution of the State of Illinois of
1970 abolished sovereign immunity subject to legislative
action, but Public Act 77–1776, effective January 1,
1972, provides that claims against the State shall be filed
only in the Court of Claims.) However, we find that the
circuit court did have jurisdiction because this action
contests the conduct of State officials in the enforcement
of an allegedly unconstitutional statute and in allegedly
proceeding in violation of law. Such an action is not
considered an action against the State. *Moline Tool Co. v.
Department of Revenue, 410 Ill. 35.*

Turning to the issues present on the merits, we first
consider the validity of the transfer of the $21,000,000
from the General Assistance Appropriation to the Aid to
Families with Dependent Children Fund.

Section 1–1 of the Public Aid Code (Ill.Rev.Stat.
1969, ch. 23, par. 1–1) establishes that the intent and
purpose of the legislation is to "assist applicants and
recipients to maintain a livelihood compatible with health
and well being." This intent is carried throughout the Act
and embodied in all five programs of the Public Aid Code,

including article VI, General Assistance, and article VII, Local Aid to Medically Indigent.

Implementing and effectuating the intent and purpose of the Public Aid Code, the General Assembly passed Public Act 77—271 which appropriated specific separate sums to the five programs established in the Public Aid Code. In addition, Public Act 77—271 provides: "The Department, with consent in writing of the Governor, may reapportion the amounts appropriated in this section among the several subdivisions of distributive expenses herein designated as the need therefor arises." It is this provision upon which the defendants rely as complete authority for the transfer.

The plaintiffs argue however that this provision is invalid because it is an unconstitutional delegation of legislative power to the executive branch of government. We agree. Article III of the constitution of 1870, as well as section 1 of article II of the constitution of 1970, effective July 1, 1971, preserves the separation of powers between the three branches of government—legislative, executive and judicial—and further provides that one branch shall not exercise the powers delegated to the others. The power to make appropriations is constitutionally vested in the General Assembly and section 17 of article IV of the constitution of 1870, under which this appropriation was made, restricted the power of the General Assembly to alter appropriations, once made, by providing: "*** no money shall be diverted from any appropriation made for any purpose, or taken from any fund whatever, either by joint or separate resolution." More specifically in this case by line appropriation the General Assembly authorized the expenditure of $117,908,700 for General Assistance and Local Aid to the Medically Indigent (Public Act 77—271) and the Governor, through his item reduction power, on July 13, 1971, reduced this amount by $40,000,000. Subsequently on October 5, 1971, he announced the

transfer of $21,000,000 from these specific programs to the AFDC Fund. The question here is whether the Governor can be authorized to do what the General Assembly itself could do only by an act duly passed and approved, *i. e.,* divert the funds appropriated for one particular purpose, thereby reducing one appropriation and increasing the other. While the Governor possesses the power to reduce an appropriation by means of an item veto, he could not exercise, nor could the legislature constitutionally delegate to him or a department of the executive branch of government, the power to transfer funds specifically appropriated for one program.

Furthermore, in this case, the Illinois Department with consent of the Governor would have the apparent unrestricted authority to determine when the need for reapportionment of funds exists. Once it is determined by them that need exists, they could transfer money between funds which would frustrate the clear legislative intent to appropriate according to the fiscal requirements of each specific program and treat those in similar circumstances—receiving welfare "to maintain a livelihood compatible with health and well being"—in a different way. Therefore, the circuit court properly held that the transfer of $21,000,000 from the General Assistance Fund was invalid.

The defendants further contend that no duty was imposed upon the Illinois Department to honor the November, 1971, Cook County Department request for $9,637,754 and having been ordered to pay that amount they are therefore entitled to repayment of that sum which exceeded its offer of $3,000,000 for General Assistance for that period.

Section 12—21.14 of the Public Aid Code (Ill.Rev. Stat. 1969, ch. 23, par. 12—21.14) provides in part: "The Illinois Department shall review these estimates [of need under Articles VI and VII] and shall determine and allocate to the several counties the amounts necessary to supple-

ment local funds ***." The defendants have admitted that the offer was insufficient to meet the minimal standards of the Code to "assist applicants and recipients to maintain a livelihood compatible with health and well being." In fact, it was established that the estimates submitted to the Illinois Department by the Cook County Department were drawn on the standards of the Illinois Department.

The defendants contend that the reduced payments are necessary to avoid the depletion of the entire appropriation prior to the end of the fiscal year, June 30, 1972. That may be true, but the emergency does not exist now and remedial action may be forthcoming, as it has in the past. In view of the facts that the estimates were drawn in accord with the standards of both the Public Aid Code and the Illinois Department; that sufficient monies were available to honor the estimates; and, the purpose of the Code is to provide recipients with "a livelihood compatible with health and well being," we are unable to hold from the record presented that such estimates were improperly ordered to be honored in accordance with the directive of section 12—21.14 of the Code.

It is unnecessary to consider the remaining issues because the aforementioned is dispositive of this cause.

The decision of the circuit court of Cook County is affirmed and the motion of defendants for leave to file a petition for writ of *mandamus* is denied.

*Judgment affirmed and petition denied.*

MR. JUSTICE RYAN, dissenting:

The majority opinion seems to indicate that the State of Illinois is obligated to pay to the county of Cook the amount of money which the county requested from the State for General Assistance purposes. I cannot accept such a conclusion and I find nothing in the statute or the regulations of the Illinois Department of Public Aid to support such a position.

The General Assistance program is peculiarly a local government program. The statute (Ill.Rev.Stat. 1969, ch.

23, par. 12—3) provides that the local governmental units shall provide funds for and administer the programs. If a local governmental unit levies a tax of one mill for General Assistance, it qualifies for State funds to supplement the local funds. (Ch. 23, par.12—21.13.) If a request is made to the State for money for the program, the county must set forth an itemized statement showing estimates of assistance necessary for the ensuing month and must show the amount of money raised by taxation for this purpose. If the Department has reasons to believe that the estimates are excessive it may require the appropriate officials to substantiate the estimate *"to the satisfaction of the Department."* (Ch. 23, par. 12—21.4.) This paragraph also provides: "The Illinois Department *shall review* these estimates and *shall determine* and allocate to the several counties the amount necessary to supplement local funds \*\*\*." (Emphasis supplied.)

The statute pertaining to General Assistance (ch. 23, par. 6—1 *et seq.*) provides certain eligibility requirements for recipients under this program. A person who is eligible under certain other provisions of the Public Aid Code but who fails or refuses to comply with the requirements to qualify him for aid under these other programs is not entitled to General Assistance. An employable person, to be eligible for General Assistance, must register for and accept suitable employment.

On October 5, 1971, the Illinois Department of Public Aid circulated a memorandum which set forth the impending welfare crisis, attempted to analyze the cause therefor, and set forth certain proposed solutions. This memorandum stated that the Department has been particularly concerned with the administration of the Cook County General Assistance Program. "The inadequacy of the G. A. (General Assistance) case records with respect to even the most basic information suggested that considerable sums of federal matching money could be lost because recipients who were eligible for the federally funded programs were

placed on General Assistance merely to avoid the more extensive reporting required by federal regulations. This was confirmed by written correspondence from the Cook County Department of Public Aid in June, 1970, indicating that the county was condoning this practice." The memorandum continued to state that the General Assistance rolls now contain an increased number of single employable males who have lost jobs due to the economic turndown. The memorandum further stated that an intensive review of General Assistance cases had been undertaken. The review was incomplete but as of the date of the memorandum it indicated that a great many of the cases on General Assistance may be eligible for aid under programs for which Federal assistance is available. Some cases involve persons who suffer from serious health problems and can be qualified for assistance under the disability assistance program. In addition numerous recipients have failed to respond to requests to appear for interviews or medical examinations and are therefore subject to being dropped from the rolls. Of the 815 cases reviewed, only 413 or 51% were found to be eligible for continuing General Assistance.

In addition to the Department's recommendations concerning the removal of ineligibles from General Assistance, the memorandum also contained these recommendations:

"The choices available to Cook County and Chicago might include:

(1) Bring General Assistance grants into line with the remainder of the State (Cook County, currently the only home rule county in Illinois now pays an average of $144 per person compared with an average of $86 downstate);

(2) Place recipients in public employment (Chicago and Cook County together have already been allocated over 1,000 new public service jobs under the Emergency Employment Act alone);

(3) Make assistance available for employable persons

for no more than one or two months as do most cities and counties in the country administering such a program;

(4) Discontinue assistance to employables altogether; or, finally,

(5) Re-allocate their own budget or raise home rule tax money to fund the existing program ***."

The memorandum pointed out that although there are 1,455 local governmental units in the State potentially eligible for State supplements in the General Assistance program, only 44 units in 16 counties actually receive the State supplement. *Ninety-two percent of the State General Assistance Funds go to Chicago.*

In light of the analysis of the Cook County program as set forth in the memorandum, I am of the opinion that the Illinois Department, in refusing to comply with the request of Cook County for the State supplement for November, was properly exercising the authority granted to it by section 12—21.14 of the Public Aid Code to review estimates and determine the amount necessary to supplement local funds. It is urged that the estimates made by Cook County were based on standards promulgated by the Illinois Department. However, the standards promulgated by the Illinois Department are maximum standards, and Cook County has habitually based its estimates on the maximum amounts set forth in the regulations. It is obvious from the memorandum that other counties in the State base their estimates of the amount of money needed for General Assistance on something less than the maximum amount authorized by the standards.

I am of the opinion that the Illinois Department of Public Aid was properly exercising authority granted to it by the legislature when it made an allocation to Cook County of an amount less than that which the County requested, and that the court had no authority to compel the State of Illinois to reimburse Cook County for the full amount which it requested.