THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, Plaintiff-Appellee, *v.* MICHAEL J. BAKALIS, Comptroller, *et al.*, Defendants-Appellants.

First District (5th Division)   No. 77-1406

Opinion filed September 15, 1978.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Siegel and Irwin I. Zatz, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants filed this interlocutory appeal from an order directing them to deposit the sum of $2,502,538.77 with the clerk of the circuit court, to be held until further order. On appeal, defendants contend that the court abused its discretion in entering the order because: (1) the circuit court lacked the jurisdiction needed to entertain the action; (2) the order failed to meet specific statutory requirements; and (3) plaintiff failed to sufficiently establish the necessity of the remedy.

The following facts are pertinent to the disposition of this appeal.

On September 26, 1977, plaintiff filed a verified complaint alleging that it was a body politic and corporate organized under the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 101—1 et seq.). Section 2—16 of that Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16) provides in part:

"Any community college district which maintains a community college recognized by the State Board is entitled to claim a credit hour grant for all instructional categories, the average of which is not less than $17.61 for each semester hour or equivalent in a course

carried through each mid-term by each student in attendance who is a resident of Illinois and such other special grants as may be authorized by the General Assembly.

\* \* \*

Upon approval of any claim under this Section, the State Board shall prepare and certify to the State Comptroller the report of claims for community college grants and vouchers setting forth the money due each such district within 45 days from the receipt of such claims. The Comptroller shall cause his warrants to be drawn for the respective amounts due, payable to each community college district, within 15 days following the receipt of such vouchers."

Plaintiff's complaint further alleged, *inter alia*, that pursuant to section 2—16, it had timely and properly filed its claims for reimbursement for money spent on teaching programs in fiscal 1976 and 1977; that defendant Illinois Community College Board had approved plaintiff's claims for payment in the sum total of $2,502,538.77; that funds to pay said claims had been appropriated and were available for disbursement; that defendant College Board, contrary to the requirements of section 2—16, had forwarded the approved vouchers for the payment of plaintiff's claims to defendant Illinois Department of Administrative Services which refused to permit funds to pay the claims to be disbursed; that unless $2,502,538.77 is deposited in escrow with the clerk of the circuit court prior to September 30, 1977, said funds will revert to the general treasury and be lost forever to plaintiff; and that unless said funds are paid to the plaintiff, it will be forced to close down the City Colleges of Chicago for lack of funds. Plaintiff's complaint therefore prayed that a preliminary mandatory order be issued directing defendants to deposit $2,502,538.77 with the clerk of the circuit court subject to further order, and that upon final hearing, a writ of mandamus issue ordering defendants to pay that sum to plaintiff.

A hearing was held on September 27, 1977, an order was entered and a second hearing was held on September 28. Following this hearing the court entered an order which superseded the earlier order, directed defendant Michael J. Bakalis, Comptroller of the State of Illinois, and Theodore Puckorious, Director of the Department of Administrative Services of the State of Illinois, to take all steps necessary to cause the deposit not later than September 29, 1977, of the sum of $2,502,538.77 with the clerk of the circuit court, to be held pursuant to further order and, to facilitate such payments, directed defendant Illinois Community College Board to prepare all necessary vouchers and other papers setting forth the authorization and approval for the payment of the sum of $2,502,538.77 to

the plaintiff, and deliver the same to the Comptroller of the State of Illinois. Following the entry of this order, defendants filed their notice of interlocutory appeal.

OPINION

■■ In support of their contention that the trial court abused its discretion by issuing a preliminary mandatory injunction, defendants initially argue that the court was without jurisdiction to entertain the action. They stress that where, as here, a suit which could control the action of the State or subject it to liability is brought against State officials in their official capacities, the action is generally considered to be a suit against the State which is barred by the doctrine of sovereign immunity. (*Struve v. State Department of Conservation* (1973), 14 Ill. App. 3d 1092, 303 N.E.2d 32.) They concede, however, that whether a suit is considered to be brought against the State and barred by sovereign immunity depends not on the identification of the formal parties in the record, but on the issues involved and the relief sought. (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 101 N.E.2d 71; *G.H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 333 N.E.2d 261.) Defendants contend that this suit falls within the ambit of section 8 of the Court of Claims Act (Ill. Rev. Stat. 1977, ch. 37, par. 439.8) which provides in part that:

"The court [of claims] shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workmen's Compensation Act or the Workmen's Occupational Diseases Act."

Defendants argue that in light of this statute and the fact that plaintiff seeks compensation pursuant to the provisions of section 2—16 of the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16), it is only the court of claims which has proper jurisdiction of the action. As support for this argument, defendants also cite *Boards of Education v. Cronin* (1977), 54 Ill. App. 3d 584, 370 N.E.2d 19.

■■ We disagree with this argument. We note initially that in *Cronin*, the court held that defendants were under no legal duty to perform the acts which plaintiffs requested, and that the suit was therefore a suit against the State which could only be heard in the court of claims. Where, however, a suit brought against State officials seeks to compel them to perform their duty, it is not held to be a suit against the State even though the duty to be performed arises under a certain statute. (See *People ex rel. Hilger v. Myers* (1969), 114 Ill. App. 2d 478, 252 N.E.2d 924; *People ex rel. Kaneland Community Unit School District No. 302 v. Howlett* (1964), 30

Ill. 2d 128, 195 N.E.2d 678.) Section 2—16 provides for the credit hour claims of a community college district such as plaintiff herein to be filed and approved by defendant Illinois Community College (State) Board. The next steps in the process, according to the clear terms of the statute, are that "the State Board *shall* prepare and certify to the State Comptroller the report of claims for community college grants and vouchers setting forth the money due each such district" and that, within 15 days of the receipt of these vouchers, "[t]he Comptroller *shall* cause his warrants to be drawn for the respective amounts due, payable to each community college district * * *." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 122, par. 102—16.) Defendants do not dispute that plaintiff's claims for credit hour grants were approved for payment as evidenced by a letter attached to plaintiff's complaint and signed by the executive director of defendant State Board. The approved vouchers for that payment were sent, however, not to the State Comptroller as the statute directs, but to defendant Illinois Department of Administrative Services. Citing the directives of section 2—16, plaintiff asserts that defendants' action was arbitrary and erroneous, and seeks a writ of mandamus compelling defendants to perform their duty according to the statutory terms. As our supreme court held in *People ex rel. Freeman v. Department of Public Welfare* (1938), 368 Ill. 505, 507, 14 N.E.2d 642, 643:

> "[M]andamus lies to review the acts of administrative officers or boards where it appears they have acted arbitrarily or in abuse of discretion vested in them. [Citations.] We are of the opinion that the present proceeding charging arbitrary action or abuse of administrative discretion resulting from an erroneous construction of a statute is not a suit against the State."

Because this action seeks to compel the performance of a duty in accordance with the law, we conclude that it should not be considered to be a suit against the State, and it was properly within the circuit court's jurisdiction. See *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224.

● 3 Defendants next contend that the trial court abused its discretion in entering the preliminary mandatory injunction because the order violated section 3—1 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 3—1). That statute states in pertinent part that:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who

receive actual notice of the order by personal service or otherwise."

Defendants argue that under this statute the trial court's order should be declared invalid because it lacked sufficient specificity as well as reasons for its issuance, and arguably failed to include all proper parties. We note initially that the last point within defendant's argument, that there is "some question" whether the order's failure to name the State Treasurer is a failure to name all proper parties, is clearly without merit. Section 2—16 of the Public Community College Act, cited above, clearly sets forth the officials and acts relevant to plaintiff's quest for credit hour reimbursements. In proceeding under section 2—16, plaintiff properly named all parties and acts that were necessary for the statute to be complied with and compensation to be paid. More importantly, however, we find that defendants' arguments are not properly before us on appeal. As we explained in disposing of similar arguments under section 3—1 of the Injunction Act in *Kobrand Corp. v. Foremost Sales Promotions, Inc.* (1972), 8 Ill. App. 3d 418, 422, 291 N.E.2d 61, 64:

> "It has long been the basic law of Illinois that the Appellate Court will not consider issues not presented to the trial court and not appearing in the record. (*Pennington v. Alexander*, 103 Ill. App. 2d 145, 148, 242 N.E.2d 788.) The concept that this court may not consider issues or contentions which were not previously decided by the trial court has been described as 'well established.' (*Williams v. City of Gibson*, 129 Ill. App. 2d 431, 433, 263 N.E.2d 138.) Therefore, we may not consider for the first time in this appeal questions not raised in the trial court. *Little Sister Coal Corp. v. Dawson*, 45 Ill. 2d 342, 349, 259 N.E.2d 35.
>
> In the case at bar, the record does not show that any objection was made by defendant to the form of the injunctional order in the trial court. Defendant apparently chose to remain mute and, therefore, failed to give the trial court an opportunity to correct the error, if there was one. In this type of situation we may not consider for the first time in this appeal the matter of alleged defects in the form of the injunctional order."

As in *Kobrand*, the record in this case does not show that defendants ever objected to the form of the court's order, cited the requirements of the Injunction Act or called the alleged defects in the order to the court's attention. Having failed to meet their responsibility to raise these matters in the trial court, defendants cannot now cite them as grounds for reversal on appeal. (See *Presbyterian Distribution Service v. Chicago National Bank* (1959), 21 Ill. App. 2d 188, 157 N.E.2d 789.) We note, additionally, that a review of the injunction order, considered with defendants' prompt compliance, indicates that the order sufficiently informed defendants of

the actions to be taken and did not place upon them so onerous a burden as to render the order invalid. See *Somerset Importers, Ltd. v. Gold Standard Liquors, Inc.* (1974), 18 Ill. App. 3d 39, 309 N.E.2d 286; *Paddington Corp. v. Westerville Beverage Mart, Inc.* (1973), 12 Ill. App. 3d 555, 299 N.E.2d 554.

■■■ Finally, defendants contend that the preliminary injunction should not have been granted because plaintiff failed to sufficiently establish the necessity of the remedy. Defendants point out that a preliminary mandatory injunction should only be granted in cases where great necessity or extreme urgency is clearly established. (*Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180.) Where, however, a condition of rest will inflict irreparable injury, it is proper that a preliminary mandatory injunction be issued. (*Brooks v. La Salle National Bank* (1973), 11 Ill. App. 3d 791, 298 N.E.2d 262.) In its complaint and at the hearing before the trial court, plaintiff alleged that to prevent the closing of the district's community colleges, it was urgent that the $2,502,538.77 claimed for reimbursement be deposited with the clerk of the circuit court before September 30, 1977. Plaintiff argued that if this was not done, those funds would lapse, revert back to the State's general treasury, and be forever lost prior to the final disposition of the case on its merits. As support for this argument, plaintiff cites section 25 of the State Finance Act (Ill. Rev. Stat. 1977, ch. 127, par. 161) which states that:

> "All appropriations shall be available for expenditure for the fiscal year or for a lesser period * * *.
>
> Outstanding liabilities as of June 30, payable from appropriations which have otherwise expired, may be paid out of the expiring appropriations during the three-month period ending at the close of business on September 30."

Although defendants argue that payments due to plaintiff could be "adjusted" after September 30, even that argument states that such adjustments would be made "out of the current fiscal year appropriations *if* such funds are available." (Emphasis added.) Further, in a letter signed by defendant Illinois Community College Board's executive director and attached to plaintiff's complaint, it was admitted that "the deadline of all FY 77 [fiscal year 1977] apportionment claims is September 30." Finally, counsel for defendant Illinois Community College Board admitted at the hearing on September 27, 1977, that the funds claimed by plaintiff were that of "the FY 77 budget which ends June 30, 1977. If not disbursed during the first quarter, September 30, they lapse and it [*sic*] goes back into the general coffers of the State of Illinois." The granting of a preliminary injunction is within the sound discretion of the trial court and the appellate court, in reviewing a grant or denial of interlocutory relief, is restricted solely to a determination of whether the trial judge correctly

974

exercised his broad discretionary power. (*Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.) In deciding whether to issue a preliminary mandatory injunction, it is proper for the trial court to balance the relative convenience and injury to the parties which would result. (*Davis v. East St. Louis & Interurban Water Co.* (1971), 133 Ill. App. 2d 801, 270 N.E.2d 424.) The facts herein indicate that the preliminary mandatory injunction prevented grave injury to plaintiff, imposed no undue hardship on defendants and was therefore properly within the trial court's discretion.

Based on the foregoing, the order of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.