THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT
NO. 508, Plaintiff-Appellee, *v.* MICHAEL J. BAKALIS, Comptroller, *et al.*,
Defendants-Appellants.

First District (5th Division)   No. 79-129

Opinion filed January 11, 1980.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Siegel and Irwin I. Zate, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action for a writ of mandamus against defendants to compel payment of $2,502,538.77 allegedly due plaintiff as credit hour grants under section 2—16 of the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16). The trial court granted summary judgment for the plaintiff, and defendants appeal from that judgment. On appeal, defendants maintain that these funds cannot be distributed to the plaintiff as credit hour grants because the express approval of both the Comptroller and the Department for this expenditure has not been obtained as required by statute. Defendants' position does not challenge plaintiff's ultimate right to receive credit hour grants, but rather the procedure by which disbursement of these funds is to be made. Consequently, the issues before us center on the statutory duties of the defendants with regard to the expenditures of public funds for credit hour grants.

According to the allegations of the plaintiff's complaint, plaintiff was entitled to receive $2,502,538.77 as credit hour grants for fiscal years 1976 and 1977 under section 2—16 of the Public Community College Act (Ill. Rev. Stat. 1977, ch. 122, par. 102—16). Section 2—16 states in pertinent part:

> "Any community college district which maintains a community college recognized by the State Board (Illinois Community College Board) is entitled to claim a credit hour grant for all instructional categories, the average of which is not less than $17.61 for each semester hour or equivalent in a course carried through each mid-term by each student in attendance who is a resident of Illinois and such other special grants as may be authorized by the General Assembly.
>
> * * *
>
> Upon approval of any claim under this Section, the State Board

shall prepare and certify to the State Comptroller the report of claims for community college grants and vouchers setting forth the money due each such district within 45 days from the receipt of such claims. The Comptroller shall cause his warrants to be drawn for the respective amounts due, payable to each community college district, within 15 days following the receipt of such vouchers. * * *" (Ill. Rev. Stat. 1977, ch. 122, par. 102—16.)

Plaintiff timely filed claims for credit hour grants for fiscal years 1976 and 1977 with the Illinois Community College Board (State Board), which approved plaintiff's claims in the amount of $2,502,538.77. Contrary to section 2—16, the State Board sent the approved vouchers for these credit hour grants to the Department of Administrative Services (Department), instead of to the State Comptroller (Comptroller). Although funds have been appropriated by the General Assembly to pay for these credit hour grants, the Department has refused to permit disbursement of these funds. Plaintiff filed this action for a writ of *mandamus* on September 26, 1977. In its prayer for relief, plaintiff requested a preliminary mandatory injunction ordering defendants to deposit $2,502,538.77 with the clerk of the court, and for a writ of *mandamus* ordering defendants to pay the sum to plaintiff.

Following a hearing, the trial court issued a preliminary injunction directing the Comptroller and the Department to deposit $2,502,538.77 with the clerk of the court. Defendants filed an interlocutory appeal from that order, and on that appeal we held that the doctrine of sovereign immunity did not bar plaintiff's action and that the trial court did not abuse its discretion in issuing the preliminary mandatory injunction. *Board of Trustees v. Bakalis* (1978), 64 Ill. App. 3d 967, 382 N.E.2d 26.

In August 1978, during the pendency of the prior appeal, plaintiff filed a supplemental complaint alleging that the State Board has approved additional credit hour grants in the amount of $1,118,694.99 and $1,420,234. The approved vouchers for these claims were sent directly to the Comptroller, but plaintiff had not received payment. Subsequent to the filing of the supplemental complaint, payment of the vouchers mentioned in the supplemental complaint was made to the plaintiff. The credit hour grants mentioned in the original complaint remain unpaid.

After our opinion in the prior appeal, defendants filed their answers to plaintiff's complaint. All parties filed motions for summary judgment and agreed that no genuine issue of material fact exists in this case. In granting summary judgment for the plaintiff, the trial court stated that the action of the State Board in sending the approved vouchers for credit hour grants to the Department violated the clear directives of section 2—16 and further, that the Department had no duties with regard to credit

hour grants under section 2—16. Accordingly, the trial court ordered defendants to pay $2,502,538.77 to the plaintiff.

OPINION

■■ Before proceeding to defendants' substantive arguments, we must respond to plaintiff's procedural contention that our decision in the prior appeal precludes our review of this appeal. In short, plaintiff contends that all issues presently raised by the defendants were decided in the prior appeal, and therefore are not reviewable here. (*Government Employees Insurance Co. v. Dennis* (1967), 90 Ill. App. 2d 356, 232 N.E.2d 750.) In the prior appeal we held that the trial court did not abuse its discretion in issuing a preliminary injunction. Under Illinois law, the function of an appellate court in reviewing the issuance of a preliminary injunction is restricted solely to a determination of whether the trial court correctly exercised its broad discretionary powers. (*Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.) Substantive issues are to be considered only so far as is necessary to determine whether the trial court acted within the perimeters of its authority. (*Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180.) In the prior appeal, before deciding whether the trial court abused its discretion in issuing the preliminary injunction, we had to decide the threshold question of whether plaintiff's action for *mandamus* was barred by the doctrine of sovereign immunity. We stated in resolving that issue:

"As our supreme court held in *People ex rel. Freeman v. Department of Public Welfare* (1938), 368 Ill. 505, 507, 14 N.E.2d 642, 643:

'[M]*andamus* lies to review the acts of administrative officers or boards where it appears they have acted arbitrarily or in abuse of discretion vested in them. [Citations.] We are of the opinion that the present proceeding charging arbitrary action or abuse of administrative discretion resulting from an erroneous construction of a statute is not a suit against the State.'

Because this action seeks to compel the performance of a duty in accordance with the law, we conclude that it should not be considered to be a suit against the State, and it was properly within the circuit court's jurisdiction. See *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 280 N.E.2d 224." (*Bakalis*, 64 Ill. App. 3d 967, 971, 382 N.E.2d 26, 29.)

Thus, we held that because section 2—16 of the Public Community College Act imposed enforceable legal duties on the State Board and the Comptroller, plaintiff's action for *mandamus* could be maintained in the

circuit court. We left open, however, the question of whether the State Board or the Comptroller did, in fact, act arbitrarily or in abuse of any discretion vested in them by section 2—16; those questions were subsequently decided by the trial court in ruling on the motion for summary judgment. Consequently, we are at liberty here to review those determinations.

■■ Defendants contend that both the Department and the Comptroller have a statutory duty to examine claims for credit hour grants to determine the legality and accuracy of the proposed expenditures. Thus, according to the defendants, a tri-level examination of these claims must take place before payment of credit hour grants to the plaintiff: first, by the State Board; second, by the Department; and third, by the Comptroller. We begin our analysis with the statutory duties of the State Board. Section 2—16 of the Public Community College Act unequivocally states the functions of the State Board in the payment of credit hour grants. After having received claims for credit hour grants from a community college district, "the State Board shall prepare and certify to the State Comptroller the report of claims for community college grants and vouchers setting forth the amount due each such district." (Ill. Rev. Stat. 1977, ch. 122, par. 102—16.) This statute places two duties upon the State Board: one, to determine the amount due the community college district for credit hour grants; and two, to prepare and certify vouchers to the Comptroller stating the amounts due to the community college district. We agree with the trial court's decision that the State Board violated this second duty when it sent the approved vouchers for plaintiff's credit hour grants to the Department, rather than to the Comptroller.

■ Defendants rely on section 35.4(b) of the Civil Administrative Code of Illinois and section 10(16) of "An Act in relation to state finance" (Ill. Rev. Stat. 1977, ch. 127, pars. 35.4(b) and 146(16)) to support their argument involving the duties of the Department. Section 10 can be summarized as requiring that all expenditures of public funds for the "ordinary and contingent expenses of the operation, maintenance and administration" of the State Board must be certified and approved by the Department. (Ill. Rev. Stat. 1977, ch. 127, par. 146(16).) According to defendants, credit hour grants are included within the phrase "ordinary and contingent expenses" of the State Board and, therefore, claims for these credit hour grants must be approved by the Department. Contrary to defendants' argument, we note that the General Assembly has expressly recognized in the Appropriations Act for fiscal year 1978 that credit hour grants are not included in the ordinary and contingent expenses of the State Board. (Pub. Act. 80-59, July 6, 1977.) In light of this legislative determination, we cannot accept defendants' argument.

Consequently, we conclude that the Department's duties under section 10 do not encompass a mandatory review of claims for credit hour grants.

Section 35.4(b) of the Civil Administrative Code of Illinois directs the Department to perform "periodic procedural audits of state agencies" to ensure that proper fiscal control and accounting practices are being employed. (Ill. Rev. Stat. 1977, ch. 127, par. 35.4(b).) Based on this directive, defendants maintain that the Department has a duty to examine all claims for credit hour grants processed through the State Board, a State agency, before payment may be made. Neither the language of section 35.4(b) nor any line of cases interpreting statutory construction supports this position. To accept defendants' argument would be to impose upon the Department a duty to examine each and every proposed expense of all State agencies as part of the Department's duty to perform periodic procedural audits of them. We simply cannot believe that the Legislature intended to create such an absurd duty which would be bureaucratic duplication and inefficiency of the highest order.

Finally, defendants contend that article V, section 17 of the Illinois Constitution of 1970, and section 9 of the State Comptroller Act (Ill. Rev. Stat. 1977, ch. 15, par. 209) impose a nondelegable duty upon the Comptroller to examine vouchers for credit hour grants, which have been approved by the State Board, before a disbursement of these funds to the plaintiff. Section 17 of article V of the Illinois Constitution of 1970 states:

"The Comptroller, in accordance with law, shall maintain the State's central fiscal accounts, and order payments into and out of the funds held by the Treasurer." (Ill. Const. 1970, art. V, §17.)

Section 9 of the State Comptroller Act provides in pertinent part:

"No payment may be made from public funds held by the State Treasurer in or outside of the State treasury, except by warrant drawn by the comptroller and presented by him to the treasurer to be countersigned * * *. * * * The Comptroller shall examine each voucher and all other documentation required by or pursuant to law to be filed with him and shall ascertain the legality of the transaction. * * * If he has reason to believe from the documents filed in connection therewith that such obligation or expenditure of public funds is contrary to law or unauthorized, * * * the Comptroller shall refuse to draw a warrant." (Ill. Rev. Stat. 1977, ch. 15, par. 209.)

According to the defendants, the trial court's ruling prevents the Comptroller from performing his duty of examining and ascertaining the legality of proposed expenditures of public funds for credit hour grants and to refuse to issue a warrant for public funds where the proposed expenditures are illegal. If this were true, we would be compelled to reverse the trial court's judgment because the Comptroller's duty to

examine and ascertain the legality of proposed expenditures of public funds could not be more explicit. However, we feel that the trial court's ruling, consistent with section 2—16 of the Public Community College Act, merely limits the time frame within which the Comptroller has to fulfill his statutory duties. Section 2—16 provides in part:

> "Upon approval of any claim [for credit hour grants] under this Section, the State Board shall prepare and certify to the State Comptroller the report of claims for community college grants and vouchers setting forth the money due each such district within 45 days from the receipt of such claims. The Comptroller shall cause his warrants to be drawn for the respective amounts due, payable to each community college district, within 15 days following the receipt of such vouchers." (Ill. Rev. Stat. 1977, ch. 122, par. 102—16.)

Consequently, the Comptroller's duty to examine and ascertain the legality of proposed expenditures of public funds for credit hour grants is not abrogated by section 2—16 of the Public Community College Act, but rather the time to fulfill this duty is limited by the legislature to 15 days from receipt of the approved vouchers for credit hour grants from the State Board.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.