Danny Clark CROSS,
Plaintiff–Appellee,

v.

AMERICAN COUNTRY INSURANCE
CO., Defendant–Appellant.

No. 88–2318.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1989.

Decided May 23, 1989.

Allen L. Wiederer, Jesmer & Harris, Chicago, Ill., for defendant-appellant.

Danny C. Cross, Detroit, Mich., for plaintiff-appellee.

Before WOOD, Jr., and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Defendant-appellant American Country Insurance Company ("company") appeals from the jury's award of compensatory and punitive damages in favor of plaintiff-appellee Danny Clark Cross in a diversity action for intentional interference with a contractual relationship. Plaintiff, a Missouri citizen, who is licensed to practice law in Illinois, filed this diversity action in federal district court claiming that the company, an Illinois corporation, tortiously interfered with a contingent-fee contract he had with a personal injury claimant. The company settled the claim directly with the claimant, without contacting Cross. At the conclusion of plaintiff's case and again at the end of defendant's case, the company moved for directed verdict. The jury returned a verdict against the defendant and awarded plaintiff compensatory and punitive damages. The defendant renewed its challenge in a motion for judgment notwithstanding the verdict, which the district court denied.

Appellant raises three issues on appeal. First, it argues that we should reverse the judgment in favor of plaintiff because the contingent-fee contract was unenforceable since it violates the Illinois Code of Professional Responsibility. Second, the company argues that we should grant judgment notwithstanding the verdict because there is not sufficient evidence to establish that it committed the tort of intentional interference with a contract. Finally, it argues that we should grant judgment notwithstanding the verdict because its actions were not of a wanton or malicious nature to support an award of punitive damages and because the plaintiff failed to establish any complicity by the company. We affirm.

I.

On June 7, 1982, Preston Patterson, Jr. was involved in an automobile accident with a Checker taxi as he was driving his father's car. The Checker Taxi Company was insured at that time by Calumet Insurance Company, which is now known as American Country Insurance Company. On or about June 23, 1982, Patterson contacted Cross to represent him in his personal injury claim against the insurance company. In connection with his claim, Patterson signed a retainer agreement with the plaintiff. The agreement stated that plaintiff would receive one-third of any settlement reached, but it did not state when expenses would be deducted nor was it signed by the plaintiff. Along with the contingent-fee agreement, Patterson also signed and returned a waiver of medical information and a confidential client information form.

On June 29, 1983, the plaintiff sent a letter, on his attorney letterhead, to the claims department of Checker Taxi informing it that he would like to contact its insurance company about his client, Patterson's accident. Cross neither contacted the company directly nor sent it an attorney's lien. On July 7, 1983, Patrick Lynch, the company's assistant claims manager, wrote a note to Roosevelt Douglas, the company's claims adjusting supervisor, asking "Who is Preston Patterson?" Tr. at 200. Douglas attempted, albeit unsuccessfully, to contact Cross at the telephone number on his letterhead. On July 21, 1983, Cross returned Douglas' calls and told him that he represented Patterson in his personal injury claim against the company.

On July 27, 1983, Douglas wrote a note to Ricky Guyton, a claims adjuster for the

company, telling him to "Go see this man [Patterson] right away." *Id.* at 79. Douglas also wrote a memorandum, on July 28, 1983, stating that Patterson came down to the office, but they were unable to reach a settlement. He further noted that Patterson needed to talk to someone first and Douglas told him to bring his bills if he came back. On July 29, 1983, Douglas wrote another memorandum for the files stating that Patterson called him and asked a few questions about paying his attorney. Douglas told him that the company would pay the fee, and Patterson responded that he would return to the office.

Cross testified that on July 30 or 31, 1983, Patterson called him to say that he "was being solicited by the company to come to its office." *Id.* at 70–71. Cross further testified that Patterson informed him that representatives from the company had come to his home. Patterson's father corroborated Cross' testimony by saying that someone from the company visited his home looking for his son and that he received telephone calls from the company for his son.

Cross testified that Patterson sounded inebriated over the telephone, and Cross was afraid that the company was taking advantage of his client. He told Patterson that he would call the company and instruct them not to contact Patterson directly. Cross then testified that he called the company and spoke with Patrick Lynch. He told Lynch that representatives from Lynch's office had come to his client's home and were asking his client to go to their office to discuss a settlement. Cross explained to Lynch that the company's agents had told Patterson that he did not need a lawyer and that litigation takes a long time. Cross ordered Lynch to stop contacting his client directly about the settlement. On cross-examination, Douglas denied contacting Patterson and stated that he did not consider Cross to be Patterson's attorney because Cross had not sent him a valid attorney's lien.

In October 1983, Patterson called Cross to tell him that he had settled his claim with the company for $650 and that the company would pay his attorney fee. The check and the release of liability were signed by Patrick Lynch.

Cross never received any payment from the company or from Patterson and subsequently filed this suit against the company in federal district court for intentional interference with a contractual relationship. At the conclusion of plaintiff's case and again at the conclusion of defendant's case, the defendant filed a motion for directed verdict. On February 24, 1988, the jury returned a verdict against defendant and awarded plaintiff $216.66 in compensatory damages and $15,000 in punitive damages. The defendant renewed its challenge by moving for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied the motion. The district court, without objection, applied Illinois law, and we agree that this is the proper substantive law to apply.

Appellant raises three issues on appeal. In essence, appellant argues that Cross failed to establish a prima facie case of intentional interference with a contractual relationship. Two of appellant's three issues on appeal specifically contest Cross' failure to establish the elements of this tort. In Illinois, a plaintiff must demonstrate sufficient proof of the five elements of the tort of intentional interference with a contract. These five elements are: "(1) The existence of a valid and enforceable contract, (2) The defendant's knowledge of the existing contract, (3) Intentional and malicious inducement of the breach, (4) The subsequent breach by the third person due to defendant's wrongful conduct, and (5) Damage to the plaintiff." *Zamouski v. Gerrard,* 1 Ill.App.3d 890, 275 N.E.2d 429, 433 (1971); *accord Swager v. Couri,* 60 Ill.App.3d 192, 17 Ill.Dec. 457, 460, 376 N.E.2d 456, 459 (1978), *aff'd,* 77 Ill.2d 173, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979). Appellant claims that Cross failed to prove three of these elements. We will discuss each element separately.

## II.

■ Appellant first argues that the contingent-fee agreement is not a valid and

enforceable contract because it violates Rule 2–106(c)(2) of the Illinois Code of Professional Responsibility. The question of whether a contract is enforceable under considerations of public policy is a conclusion of law. *See Zeigler v. Illinois Trust & Sav. Bank*, 245 Ill. 180, 91 N.E. 1041, 1045 (1910). Thus, we review it *de novo. LaSalle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). · The Illinois Supreme Court officially adopted the Illinois Code of Professional Responsibility on June 3, 1980, and it became effective on July 1, 1980. The current version of Rule 2–106, the rule at issue in this appeal, became effective on August 1, 1981. Section (c)(2) of this rule provides:

> Any contingent-fee agreement shall be in writing. The original and each copy shall be signed by the lawyer and by each client. One signed copy shall be provided to each client at the time of making the agreement, and one shall be retained by the lawyer. Any contingent-fee agreement shall set forth the precise method by which the fee is to be determined, including the percentage, or percentages, if any, to be applied in the event of settlement, trial or appeal, whether expenses are to be deducted before or after the contingent fee is calculated and any other factors relevant to the fee arrangement.

ILL.ANN.STAT. ch. 110A, foll. ¶ 774 (Smith–Hurd 1985) (Canon 2). Both parties agree that the contract was not signed by Cross and that it did not state when expenses were to be deducted. Defendant contends that *since the contract fails to comply with* the requirements of the disciplinary rule, the contract is unenforceable as contrary to public policy. Defendant properly preserved this issue for appeal by objecting to the court's instruction to the jury, which was overruled, that a valid and enforceable contract existed between Cross and Patterson. Tr. at 252, 305.

■ However, contrary to defendant's contention, the Code of Professional Responsibility is not binding on the courts. *In re Yamaguchi*, 118 Ill.2d 417, 113 Ill.Dec. 928, 932, 515 N.E.2d 1235, 1239 (1987);

*In re Teichner*, 104 Ill.2d 150, 83 Ill.Dec. 552, 557, 470 N.E.2d 972, 978 (1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); *Corti v. Fleisher*, 93 Ill.App.3d 517, 49 Ill.Dec. 74, 86, 417 N.E.2d 764, 776 (1981). Instead, it provides guidelines for proper professional conduct and attorneys can be disciplined for failing to adhere to its requirements. While one Illinois Appellate Court has said that the Code has the function of law, *see Benn & Assocs., Ltd. v. Nelsen Steel & Wire, Inc.*, 107 Ill.App.3d 442, 63 Ill.Dec. 251, 255, 437 N.E.2d 900, 904 (1982), subsequent Illinois Supreme Court decisions have held that the Code is not binding on the courts, *Yamaguchi*, 113 Ill.Dec. at 932, 515 N.E.2d at 1239; *Teichner*, 83 Ill.Dec. at 557, 470 N.E.2d at 978.

■ We agree with the district court that the contingent-fee agreement is enforceable and that its violations of Rule 2–106(c)(2) are only "minor technical deficiencies." District Court's Order, Rec. 33, at 6. The Committee Comments to Rule 2–106 specifically state that subparagraphs (c)(1) through (c)(3) are guidelines, not mandatory requirements for contingent-fee agreements. ILL.ANN.STAT. ch. 110A, foll. ¶ 774 committee comments Rule 2–106.

For its proposition that the contract is void and contrary to public policy, defendant cites two cases in which Illinois courts have declared contracts unenforceable as violative of public policy. *See Benn*, 63 Ill.Dec. at 256, 437 N.E.2d at 905; *Fleisher*, 49 Ill.Dec. at 87, 417 N.E.2d at 777. The facts of those cases, however, are distinguishable from those of the instant appeal. In *Benn*, a professional service corporation, organized to render legal services pursuant to the Professional Service Corporation Act ("PSCA"), entered into a business contract with an Illinois corporation. The contract in *Benn* specifically violated the PSCA because a professional service corporation organized to render legal services can offer only legal services, not business services. *Benn*, 63 Ill.Dec. at 255, 437 N.E.2d at 904. The court also concluded that the contract was unenforceable as contrary to public policy because it violated

Illinois' public policy against "feeder businesses and in-person solicitation by lawyers." *Id.* 63 Ill.Dec. at 256, 437 N.E.2d at 905. The nature of the contract specifically violated Rules 2–102(c) and 2–103(a) of the Illinois Code of Professional Responsibility which respectively prohibit an attorney from engaging in a dual capacity as an attorney and businessman and from in-person solicitation. *Id.* 63 Ill.Dec. 255, 437 N.E.2d at 904. In contrast, the contract in the case at bar does not violate any established public policy. The contingent-fee contract was designed for a lawful purpose, legal representation, and contingent-fee arrangements in personal injury cases are allowed in Illinois. *Cf.* ILL.ANN.STAT. ch. 110A, foll. ¶ 774 (Rule 2–106(c)(4)) (prohibiting contingent-fee agreements in criminal cases, divorce actions, and adoption proceedings).

In *Fleisher*, the court concluded that a contract was void and contrary to public policy because it violated the right to choice of counsel. In that case, the attorney had entered into an employment agreement with his law firm which provided that when he terminated his association with the firm, the firm would transfer the files of clients he had referred to it back to him. The attorney failed to demonstrate that he had a lawyer-client relationship with these clients or that they had given their permission to the transfer of their files. The court held that the contract was against public policy because "it deprived the clients of their right to be represented by counsel of their own choice." *Fleisher,* 49 Ill.Dec. at 78, 417 N.E.2d at 768.

In contrast, the instant contract does not violate any established public policy, nor is its subject matter injurious to the public. *See Roanoke Agency, Inc. v. Edgar,* 101 Ill.2d 315, 78 Ill.Dec. 258, 263, 461 N.E.2d 1365, 1371 (1984). Contingent-fee contracts are enforceable in Illinois unless they are unreasonable. *Leonard C. Ar-*

*nold, Ltd. v. Northern Trust Co.,* 116 Ill.2d 157, 107 Ill.Dec. 224, 226, 506 N.E.2d 1279, 1281 (1987). The defendant never contends that the terms of the contract are unreasonable or that the fee requested is excessive. In fact, there are significant considerations of public policy that underlie the enforcement of contingent-fee contracts. Contingent-fee agreements are the " 'poor man's key to the courthouse door': they enable persons who cannot afford to retain an attorney on an hourly or fixed-fee basis to pursue their claims with competent counsel." *Id.* (citing *In re Teichner,* 75 Ill.2d 88, 25 Ill.Dec. 609, 616, 387 N.E.2d 265, 272, *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979)). Thus, we believe the district court correctly concluded that the contract is valid and enforceable and that it satisfies the first element of the tort of intentional interference with a contractual relationship.[1]

### III.

In addition, appellant also contends that the plaintiff failed to prove the second and third elements of the tort of intentional interference with a contract. The company appeals this issue from the denial of their motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. On appeal, we review the district court's denial of the defendant's motion for judgment notwithstanding the verdict and a new trial *de novo. Culli v. Marathon Petroleum Co.,* 862 F.2d 119, 122–23 (7th Cir.1988). We review the denial of the motion under the same standard as that applied by the district court. *Bandura v. Orkin Exterminating Co.,* 865 F.2d 816, 819 (7th Cir.1988) (citing *Panter v. Marshall Field & Co.,* 646 F.2d 271, 281 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981)). Because the district court's jurisdiction was based on diversity of citizenship, state law, Illinois

---

**1.** While we believe the contingent-fee agreement between Cross and Patterson was a valid and enforceable contract, Illinois courts have held that a contract need not be enforceable in order to support an action for tortious interference with a contract. The courts have reasoned that

it is the interference with the relationship, not the contract itself, which creates the actionable tort. *See Kemper v. Worcester,* 106 Ill.App.3d 121, 62 Ill.Dec. 29, 32, 435 N.E.2d 827, 830 (1982) (citing W. PROSSER, THE LAW OF TORTS § 129, at 932 (4th ed. 1971)).

law in this case, governs the disposition of the motion for judgment notwithstanding the verdict. *F.W. Hempel & Co. v. Metal World, Inc.,* 721 F.2d 610, 613 (7th Cir. 1983). In *Pedrick v. Peoria & Eastern Railroad Co.,* 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967), the Illinois Supreme Court held that a trial court should enter judgment notwithstanding the verdict "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■ Appellant claims that the plaintiff failed to sustain his burden of proving that the company tortiously interfered with the contractual relationship because plaintiff never established that the company had knowledge of the contract between him and Patterson. Illinois courts have long recognized that third party inducement of breaches of contract between attorneys and clients are actionable. *Herman v. Prudence Mut. Casualty Co.,* 41 Ill.2d 468, 244 N.E.2d 809, 811 (1969); *LaRocco v. Bakwin,* 108 Ill.App.3d 723, 64 Ill.Dec. 286, 288, 439 N.E.2d 537, 542 (1982); *Skolnick v. Nudelman,* 95 Ill.App.2d 293, 237 N.E. 2d 804, 810 (1968). However, an action for tortious interference with a contractual relationship does not lie each and every time a client settles his claim directly with an insurance company, rather than through his attorney. *Knell v. State Farm Mut. Auto. Ins. Co.,* 32 Ill.App.3d 491, 336 N.E. 2d 568, 571 (1975).

■ While the company claims that plaintiff failed to prove that it had knowledge of the contingent-fee agreement, the evidence shows that the company was keenly aware of the attorney-client relationship between Cross and Patterson. The company received a copy of the letter

that Cross sent to Checker Taxi, written on his professional letterhead, in which he referred to Patterson as his client. Second, Cross discussed the nature of his relationship with Patterson with Douglas, the company's agent, in a telephone conversation. Furthermore, the July 29, 1983, memorandum, that Douglas prepared for the files, states that the company told Patterson that it would pay his attorney's fee.

While the company argues that it did not know about the contract because it did not receive a copy of the contingent-fee agreement, Cross had no obligation to send a copy of the agreement to the company. Cross' correspondence and telephone conversations with the defendant were sufficient to put it on notice that plaintiff had a contractual relationship with the claimant, Patterson. *See Employers Liab. Assurance Corp. v. Freeman,* 229 F.2d 547, 549 (10th Cir.1955) (court found insurance company had sufficient knowledge of contract between attorney and client when attorney called the company and told its agent that he had been retained by the client). We also believe that the defendant insurance company, which is sophisticated and knowledgeable in handling personal injury claims, should have known that a personal injury claimant, who was represented by counsel, had entered into a contingent-fee agreement with his attorney.[2]

Finally, the company argues that it did not know about the contractual relationship between Cross and Patterson because it did not receive an attorney's lien. The fact that Cross did not send the company an attorney's lien is not dispositive of the issue of whether the company had knowledge of the contract. The Illinois statute which governs the attorney's lien, enables an attorney to file a lien and then enforce it to recover a fee owed for services rendered on a suit or claim. ILL.ANN.STAT. ch. 13,

---

2. "Contingent fee contracts are the basic means by which much litigation in tort is conducted in this State." *Estate of Harnetiaux v. Hartzell,* 91 Ill.App.2d 222, 234 N.E.2d 81, 84 (1968); *see also Kirchoff v. Flynn,* 786 F.2d 320, 326 (7th Cir.1986) ("The private market uses the contin-

gent fee for personal injury cases...."). "The contingent fee 'is now the almost exclusive method for financing most claims handled by our courts.'" D. ROSENTHAL, LAWYER AND CLIENT: WHO'S IN CHARGE? 96 (1977) (quoting F. MAC-

¶ 14 (Smith–Hurd Supp.1988).[3] Plaintiff was never required to send the company a lien to put it on notice of the contract between him and his client. Viewing the facts in the light most favorable to the plaintiff, we find that the case was properly submitted to the jury, and that the jury could have reasonably found that the company knew about the contractual relationship between Cross and Patterson.

■ Appellant also contends that Cross failed to establish that it intentionally and maliciously induced the breach of the contract. While it is true, as the company argues, that a client is entitled to settle his claim directly with an insurance company without consulting his attorney, *see Knell*, 336 N.E.2d at 572, Cross presented overwhelmingly evidence to prove that the company intentionally induced the breach of the contract in this case. First, the record reflects that Douglas, the company's agent, misrepresented to Patterson that the company would pay his attorney's fee when in fact it never intended to pay any such fee. Second, the evidence shows that the company "solicited" Patterson to come to its office to settle his claim directly. Third, the company was aware that Patterson had a drinking problem.

By telling Patterson that he did not need a lawyer and that litigation takes a long time, the company, acting through its agents, intentionally and maliciously induced him to breach his contractual relationship with Cross. *See Freeman*, 229 F.2d at 550 (court found sufficient evidence that insurance company induced breach of contract where insurer's claim adjuster told client that he did not need an attorney and

that the company would take care of everything); *State Farm Ins. Co. v. Gregory*, 184 F.2d 447 (4th Cir.1950) (sufficient evidence of inducement where company convinced client to settle for less than the face value of his insurance policy by telling him that it would be better than bringing a lawsuit and dividing the recovery with his lawyer). Taking the evidence in its entirety, we believe that there were sufficient facts to enable the jury to conclude that the company obtained a settlement with Patterson by inducing him to abandon his attorney and to settle directly with the company.

## IV.

■ Finally, appellant asserts that it is also entitled to judgment notwithstanding the verdict because its conduct was not of a willful, wanton, or malicious nature to support an award of punitive damages. It is well established in Illinois that punitive damages can be awarded when torts are committed with "fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978). These damages are awarded to punish the wrongdoer and to deter him and others from committing similar offenses in the future. *Id.* (citing *Eshelman v. Rawalt*, 298 Ill. 192, 131 N.E. 675, 677 (1921)). While it is within the discretion of the jury to award punitive damages, the question of whether the facts of a particular case justify the imposition of punitive damages is a ques-

KINNON, CONTINGENT FEES FOR LEGAL SERVICES 209 (1964)).

3. The Illinois attorney's lien statute provides, in relevant part:

Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the ser-

vices of such attorneys rendered or to be rendered for their clients on account of such suits, claims, demands or causes of action. To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. . . .

ILL.ANN.STAT. ch. 13, ¶ 14 (Smith–Hurd Supp. 1988).

**632**

tion of law. *Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157, 165 (1961).

On the facts of this case, we believe that punitive damages were properly awarded. From the evidence that defendant told Patterson to come to its office to settle without his lawyer, told him that he did not need a lawyer and that litigation takes a long time, the jury was entitled to conclude that the company intentionally induced Patterson to breach his contract and that its conduct was of a willful, wanton, and malicious nature. *See Hannigan v. Sears, Roebuck & Co.*, 410 F.2d 285 (7th Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969) (court found jury's award of punitive damages proper when defendant's intentional conduct induced the breach of contract). Furthermore, the jury might well have concluded that, but for defendant's interference with the contract, plaintiff would have recovered a larger settlement for his client and would have been entitled to one-third of this settlement as provided for in the contingent-fee agreement. *See Gregory*, 184 F.2d at 448 (reversing a jury's award of damages for plaintiff would "be to permit the wrongdoer to profit to that extent from the wrong that he has perpetrated.").

Appellant also argues that even if we assume that there was sufficient evidence to find that it induced Patterson to breach his contract with Cross, the award of punitive damages was improper under Illinois' complicity rule because there was no evidence of deliberate corporate participation in the wrongful conduct. *See Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509, 512 (1975); *Tolle v. Interstate Sys. Truck Lines, Inc.*, 42 Ill.App.3d 771, 1 Ill.Dec. 437, 439, 356 N.E.2d 625, 627 (1976). We reject this contention. Punitive damages were properly assessed against the company because of its deliberate policy to induce a claimant, who had a drinking problem, to settle his claim without the guidance of his attorney. Defendant and its agents, motivated by profit considerations, believed that they could reach a smaller settlement by negotiating with Patterson directly, rather than through his attorney. In this case, the scheme backfired.

Based on the testimony presented, there was more than ample evidence from which the jury could have found that the company's managerial agents ratified its wrongful conduct. *See Mattyasovszky*, 330 N.E.2d at 512; *Tolle*, 1 Ill.Dec. at 439, 356 N.E.2d at 627. For example, Douglas, the company's claims adjusting supervisor, was the agent who told Patterson that his attorney's fee would be paid, that he did not need a lawyer, and that litigation takes a long time. Furthermore, Lynch, the company's assistant claims manager, signed the check and settlement to Patterson even though he was fully aware that agents from the company had wrongfully induced Patterson to settle his claim without his lawyer. We believe that there is more than sufficient evidence to support the jury's award of punitive damages against the corporate defendant in this case. Therefore, we conclude that the court correctly denied defendant's motion for judgment notwithstanding the verdict, or alternatively, for a new trial.

## V.

For all the foregoing reasons, the district court's judgment is

AFFIRMED.