**Jack S. KAPLAN, Plaintiff,**

v.

**PAVALON & GIFFORD, Defendant.**

No. 92 C 3832.

United States District Court, N.D. Illinois, E.D.

Oct. 13, 1992.

George Freeman Galland, Jr., Davis, Miner, Barnhill and Galland, P.C., Chicago, Ill., for plaintiff.

Mitchell S. Goldgehn, Nathan H. Lichtenstein, Lisa J. Brodsky, Greenberg, Keele, Lunn & Aronberg, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

ASPEN, District Judge:

This diversity action arises from an alleged oral fee-sharing agreement between attorneys. Plaintiff Jack S. Kaplan brings this single-count complaint against the law firm of Pavalon & Gifford, alleging breach of contract. Presently before the court is Pavalon & Gifford's motion for summary judgment. For the reasons set forth below, we grant the motion.

## I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## II. Background

In 1986, Dr. James Cohn and his wife, Lisa Bahn Cohn, retained Kaplan to represent their minor child, Matthew Cohn, in connection with a medical malpractice action arising from injuries sustained during Matthew's birth. Although agreeing to the representation, Kaplan informed the Cohns that additional counsel possessing some experience in medical malpractice suits would be required. Accordingly, Kaplan referred the Cohns to Geoffrey Gifford, an experienced malpractice attorney associated with the law firm then known as Asher, Pavalon, Gittler & Greenfield, Ltd. ("Asher & Pavalon").[1]

Kaplan introduced the Cohns to Gifford in a meeting at Gifford's office in approximately October of 1986. At this meeting, pursuant to Kaplan's advice, the Cohns retained Gifford as additional counsel. Gifford agreed on behalf of his firm to represent Matthew Cohn on a contingent fee basis. According to Kaplan, all parties to the meeting understood that Kaplan would continue as counsel of record, contributing to the litigation as called upon by Gifford, who agreed to assume principal responsibility over the action. Further, Kaplan claims that Gifford expressly informed the Cohns that Kaplan would receive ⅓ of the fee paid to Asher & Pavalon pursuant to its fee agreement with the Cohns. The Cohns purportedly understood and consented to the fee-sharing agreement between Kaplan and Gifford, on behalf of his firm. Pavalon & Gifford denies the existence of such a fee-sharing agreement and, hence, denies that the Cohns were informed of, or consented to, the agreement as detailed by Kaplan.

The terms of the contingency fee arrangement between Asher & Pavalon and the Cohns are embodied in a written agreement prepared by Gifford, and signed by the Cohns on February 13, 1987. This agreement does not contain reference to, or disclosure of, any division of attorneys' fees or any economic benefit to be received by Kaplan. Indeed, at no time did the Cohns sign a writing disclosing the purported fee-sharing agreement between Asher & Pavalon and Kaplan. Furthermore, in all prior instances in which Kaplan referred cases to Asher & Pavalon and there was an agreement to share any attorneys' fees recovered, written retainer agreements disclosing the division of fees were signed by the clients.

In August of 1991, the parties to the Cohn action entered into a settlement agreement, entitling Matthew Cohn to $1,500,000 (in present cash value). Pursuant to its contingency fee agreement with the Cohns, Pavalon & Gifford received $362,500 in attorneys' fees. Kaplan claims that, under the terms of the fee-sharing agreement, he was to collect ⅓ of the $362,500, or $120,833.33. Upon demand,

---

1. At sometime after Gifford agreed to represent the Cohns, Gifford and several of his partners and associates left the firm of Asher & Pavalon to form the firm Pavalon & Gifford. The Cohn case followed Gifford to his new firm, rendering Pavalon & Gifford the successor in interest to the rights and duties of Asher & Pavalon.

Pavalon & Gifford denied the existence of any fee-sharing agreement, yet paid to Kaplan $32,500 in compensation for his costs and actual time expended in connection with the Cohn case. Kaplan brings this action to recover the additional $88,-333.33 allegedly due under the fee-sharing agreement.

### III. Discussion

■ Assuming the existence of a fee-sharing agreement between Kaplan and Pavalon & Gifford (as successor in interest to Asher & Pavalon), it is undisputed that the Cohns did not sign any writing consenting to such agreement. By failing to obtain the Cohns' written consent to the division of fees, the alleged agreement runs afoul of Rule 2–107 of the Illinois Code of Professional Responsibility, formally adopted by the Illinois Supreme Court on June 3, 1980, which provides in pertinent part:

> (a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm, unless (1) the client consents in a writing signed by him to employment of the other lawyer, which writing shall fully disclose (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question;....

Ill.Ann.Stat. ch. 110A, foll. ¶ 774 (Smith–Hurd 1985) (Canon 2).[2] As such, the sole issue raised in Pavalon & Gifford's motion for summary judgment is as follows: whether the violation of Rule 2–107 prohibits Kaplan from enforcing the oral fee-sharing agreement. We hold that it does.

Crucial to the determination of whether Kaplan may enforce the alleged agreement is the binding effect of the 1980 Code of Professional Responsibility on the Illinois courts. We begin by noting that the Seventh Circuit, interpreting Illinois law, has held that the Code is not binding on courts and, as such, not every violation of every rule of professional responsibility can be assumed to be the kind of grave, injurious and nontechnical violation of a strongly established public policy that justifies the voiding of a contract. *Cross v. American Country Ins. Co.*, 875 F.2d 625, 628 (7th Cir.1989); *see also Maksym v. Loesch*, 937 F.2d 1237, 1244 (7th Cir.1991) (citing *Cross*). The holding in *Cross* seems to dictate that this court deny Pavalon & Gifford's motion for summary judgment, as violation of Rule 2–107(a) is no less a "minor technical deficiency" than the violation of Rule 2–106(c)(2) in *Cross*.[3] Nonetheless, Pavalon & Gifford, relying on a recent Illinois Supreme Court decision in *In re Vrdolyak*, 137 Ill.2d 407, 148 Ill.Dec. 243, 560 N.E.2d 840 (1990), has advanced a compelling argument that either (1) Illinois law has changed since the decision in *Cross*, or (2) it has been clarified in such a manner as to contradict *Cross*. Under either circumstance, *Cross* is rendered inapplicable to the present case.

In *Cross*, Preston Patterson, Jr. was injured in an automobile accident with a taxicab. *Cross*, 875 F.2d at 626. The cab

---

**2.** Although repealed effective August 1, 1990, this disciplinary rule was in effect at the time of the alleged oral agreement for division of fees upon which Kaplan bases his claim and, as such, is applicable to the case at hand.

**3.** Rule 2–106(c)(2) provides:
> Any contingent-fee agreement shall be in writing. The original and each copy shall be signed by the lawyer and by each client. One signed copy shall be provided to each client at the time of making the agreement, and one shall be retained by the lawyer. Any contingent-fee arrangement shall set forth the precise method by which the fee is to be determined, including the percentage, or percent-

ages, if any, to be applied in the event of settlement, trial or appeal, whether expenses are to be deducted before or after the contingent fee is calculated and any other factors relevant to the fee arrangement.

Ill.Ann.Stat. ch. 110A, foll. ¶ 774 (Smith–Hurd 1985) (Canon 2). Our conclusion that the instant violation of Rule 2–107(a) is likewise a "minor technical deficiency" assumes that the Cohns were informed of, and consented to, the fee-sharing agreement. While this fact is hotly contested, for the purposes of this motion, we must resolve that dispute in favor of Kaplan, the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 254, 106 S.Ct. at 2513.

company was insured by the defendant, American County Insurance Company. Patterson retained plaintiff Cross, an attorney, to represent him in a personal injury action against the insurance company. *Id.* Cross prepared a written retainer agreement providing that he would receive ⅓ of any settlement reached in the lawsuit. Patterson, the client, signed the agreement, but Cross did not. *Id.* Subsequently, the insurance company settled the suit directly with Patterson and without contacting Cross. *Id.* at 627. Cross did not receive payment from either the insurance company or from Patterson. *Id.* Accordingly, Cross brought suit against the insurance company, claiming tortious interference with the contingency fee contract between Cross and his client, Patterson. In defense, the insurance company maintained that the contract between Cross and Patterson was nonenforceable and, hence, one of the elements of tortious interference with business relations had not been met. Specifically, the insurance company's assertion relied on the violation of Rule 2–106(c)(2), which required the contingency fee agreement to be in writing and signed by both the client and the attorney. *Id.* at 627–28.

Interpreting Illinois law, the Seventh Circuit held that the violation of Rule 2–106(c)(2) was only a "minor technical deficiency" not warranting invalidation of the contingency fee agreement between Cross and Patterson. *Id.* at 628. As a necessary finding in support of this conclusion, the court in *Cross* was required to determine that "the Code of Professional Responsibility is not binding on the courts." *Id.* Although acknowledging that at least one Illinois appellate court has held that the Code "has the function of law," *see Marvin N. Benn & Assocs., Ltd. v. Nelsen Steel & Wire, Inc.,* 107 Ill.App.3d 442, 446–47, 63 Ill.Dec. 251, 255, 437 N.E.2d 900, 904 (1st Dist.1982), the *Cross* court noted that "subsequent Illinois Supreme Court decisions have held that the Code is not binding on the courts." *Cross,* 875 F.2d at 628 (citing *In re Yamaguchi,* 118 Ill.2d 417, 113 Ill. Dec. 928, 515 N.E.2d 1235 (1987); *In re Teichner,* 104 Ill.2d 150, 83 Ill.Dec. 552, 470 N.E.2d 972 (1984), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985)). *Yamaguchi,* the most recent Supreme Court pronouncement on the issue at the time of *Cross,* certainly supported the proposition that the Code serves as guidelines, not mandatory requirements of law:

> The canons of ethics contained in the Code constitute a safe guide for professional conduct, and an attorney may be disciplined for not observing them. (*In re Taylor* (1977), 66 Ill.2d 567, 6 Ill.Dec. 898, 363 N.E.2d 845.) In determining the appropriate discipline, we bear in mind that, although fairness requires a reasonable degree of consistency and predictability, each disciplinary matter is unique and must be decided on its own facts. *In re Hopper* (1981), 85 Ill.2d 318, 53 Ill. Dec. 231, 423 N.E.2d 900.

*Yamaguchi,* 118 Ill.2d at 427–28, 113 Ill. Dec. at 932, 515 N.E.2d at 1239. However, *Yamaguchi* was not without ambiguity. Indeed, in both *Taylor* and *Hopper,* decisions relied on in *Yamaguchi,* the Illinois Supreme Court confronted conduct governed by standards predating 1980, *i.e.,* prior to the Illinois Supreme Court's formal adoption of the Code. As such, *Yamaguchi* appeared to treat the 1980 Code in the same regard as previous canons of ethics and model codes which were not adopted as official court rules.

█ In any event, to the extent that the Illinois Supreme Court in *Yamaguchi* and previous decisions suggested that the 1980 Code was not binding on courts, such conclusion no longer represents the current state of Illinois law. Indeed, the Illinois Supreme Court recently held that: "As an exercise of this court's inherent power over the bar and as rules of the court, the Code operates with the force of law. Accordingly, the Code, as a binding body of disciplinary rules, has, *sub silentio,* overruled prior judicial decisions which conflict with its mandates and proscriptions." *Vrdolyak,* 137 Ill.2d at 422, 148 Ill.Dec. at 248, 560 N.E.2d at 845. In so holding, the Illinois Supreme Court took great pains to distinguish the Code of 1980 from the previous canons of ethics and model codes on the

basis of its standing as a formally adopted court rule. *Id.* The conclusion to be drawn is apparent: *Cross*, which relied on *Yamaguchi* and earlier Illinois case law, no longer represents a proper interpretation of Illinois law. Accordingly, we find that the Code of Professional Responsibility, as formally adopted by the Illinois Supreme Court in 1980, is binding on this court and operates with the force of law. *See also In re Del Grosso*, 111 B.R. 178, 184 (Bankr. N.D.Ill.1990) ("The Supreme Court Rules, including the Code of Professional Responsibility, have the function of law and are a strong indicator of public policy in the area of attorney conduct.").

Rule 2–107 dictates the conditions under which a fee-sharing agreement between lawyers will be tolerated by law. As the alleged agreement between Kaplan and Pavalon & Gifford (as successor in interest to Asher & Pavalon) runs afoul of the requirements set forth in Rule 2–107(a), that agreement is rendered unenforceable in this court of law. Accordingly, we grant Pavalon & Gifford's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, we grant Pavalon & Gifford's motion for summary judgment. It is so ordered.