CALLIS, PAPA, JENSEN, JACKSTADT AND HALLORAN, P.C., Plaintiff-Appellee, v. NORFOLK SOUTHERN CORPORATION, Defendant-Appellant.

Fifth District No. 5—96—0709

Opinion filed October 29, 1997.

1004

Thomas W. Alvey, Jr., of Thompson Coburn, of Belleville, and James S. Whitehead, of Sidley & Austin, of Chicago, for appellant.

Keith A. Jensen, of Granite City, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The defendant, Norfolk Southern Corporation, appeals from an order of the circuit court granting the plaintiff law firm, Callis, Papa, Jensen, Jackstadt & Halloran, P.C. (Callis), a preliminary injunction against the defendant.

Dennis Astorian is an employee of the Norfolk and Western Railway Company. The railroad is a subsidiary of Norfolk Southern Corporation. Astorian is a member of the United Transportation Union. The terms and conditions of Astorian's employment are set forth in a collective bargaining agreement between the railroad and the union. Article 60 of the agreement prescribes a procedure for resolving what is known as a "minor dispute." Pursuant to article 60, where conduct that might warrant discipline comes to the railroad's attention, the railroad is permitted to hold an investigatory hearing to determine if a company rule has been violated and, if so, to impose discipline. At this hearing, the employee is permitted to be represented by a union official, but both the employee and the railroad are barred from having attorneys participate.

On August 21, 1996, Astorian allegedly suffered a workplace injury. At some point shortly after the injury, Astorian was allegedly

told by one or more of his supervisors that if he had any further complications with his injury, the supervisor(s) should be contacted day or night. On August 27, 1996, Astorian retained Callis to represent him in an action for damages under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1988)).

At some point between the date of the injury (August 21, 1996) and August 30, 1996, the railroad learned or at least believed that Astorian may have consulted a nurse practitioner for treatment related to his injuries, without first informing his supervisors. This alleged visit to the nurse appears to have occurred during off-duty hours. On August 30, 1996, as a result of the alleged failure to inform the supervisors of the visit to a nurse, Astorian was sent the following notice of formal investigation.

"Dear Mr. Astorian:

Arrange to report to the Superintendent's Office Conference Room, 7021 Hall Street, St. Louis, Missouri, at 10:00 AM, Wednesday, September 4, 1996[,] for a formal investigation.

The purpose of this investigation is to determine the facts and your responsibility, if any, in connection with your failure to follow instructions issued to you by Assistant Superintendent of Terminals G. C. Nasello at approximately 9:30 AM on August 21, 1996[,] and instructions issued to you by Trainmaster R. N. Fallin at approximately 12:45 AM on August 22, 1996, in that you failed to inform them of your need for medical attention in connection with an injury which you sustained on August 21, 1996.

If you desire witnesses and/or a representative of your organization present at this investigation, arrange accordingly.

It is your responsibility to mark off with the Crew Management Office, if necessary, to attend this investigation.

G. C. Nasello
Assistant Superintendent"

At the request of Astorian's union representative, the hearing was postponed until September 9, 1996. On September 4, 1996, Callis mailed a notice to the railroad, informing it that the firm represented Astorian. The railroad claims that this was its first notice that Astorian was represented by an attorney. On September 5, 1996, Callis filed a verified complaint seeking injunctive relief to stop the scheduled hearing. The complaint in part alleged the following:

"5. That Plaintiff, CALLIS, PAPA, JENSEN, JACKSTADT & HALLORAN, P.C., has determined that its client, DENNIS K. ASTORIAN, has a claim against the Defendant, NORFOLK SOUTHERN CORPORATION, a corporation, under the Federal Employer's Liability Act, 45 U.S.C. Sections 51—60, and intends to file a Complaint against this Defendant in this Court in the next sixty (60) days.

6. That Defendant, NORFOLK SOUTHERN CORPORATION, a corporation, was notified by a letter sent certified mail dated September 4, 1996, notifying Defendant of Plaintiff's client's representation by Plaintiff's law firm, a copy of which is attached as Exhibit 'A.'

7. That DENNIS K. ASTORIAN received a certified letter dated August 30, 1996, giving notice of an investigatory/disciplinary hearing set for September 4, 1996[,] to be held by Defendant in St. Louis, Missouri. ***

8. That DENNIS K. ASTORIAN's union representative, Mr. W. L. Duncan, requested that Defendant continue the September 4, 1996, investigatory/disciplinary hearing and Defendant rescheduled the hearing for September 9, 1996. ***

9. That at said hearing DENNIS K. ASTORIAN is subject to questioning by representatives of Defendant concerning his accident and injuries for which Plaintiff represents him. None of the attorneys employed by ASTORIAN will be allowed to be present during said hearing, as ASTORIAN's sole representative can only be a union official.

10. That Defendant is thereby attempting to question ASTORIAN outside of the presence of his attorneys concerning the subject matter for which Plaintiff represents ASTORIAN in a separate action to be filed under the FELA.

11. That unless restrained by this Court, Defendant's representatives can and will interfere with the contractual relationship between the Plaintiff and its client, DENNIS K. ASTORIAN, by forcing ASTORIAN to either subject himself to questioning and provide information regarding his [FELA] suit, without the assistance of counsel, or face immediate dismissal for failure to do so, thus causing the Plaintiff and its client, DENNIS K. ASTORIAN, to suffer immediate and irreparable harm.

12. That the above-mentioned actions of the Defendant will subject Plaintiff to irreparable injury due to the fact that Plaintiff has an ethical and contractual duty to represent its client, DENNIS K. ASTORIAN, fully and zealously, and to allow Defendant to interrogate DENNIS K. ASTORIAN outside the presence of and without the counsel of Plaintiff would subject Plaintiff to potential malpractice and ethical charges.

13. That Plaintiff has no adequate remedy at law given that to advise DENNIS K. ASTORIAN not to attend said hearing would subject him to immediate dismissal from service with Defendant.

14. That were Plaintiff's client to attend and subject himself to questioning regarding his medical care and treatment at this time, his choice of physician and communication between him and his attorney regarding inappropriate medical examination, would

[*sic*] cause irreparable harm in that he would be subject to discipline by the Defendant, NORFOLK SOUTHERN CORPORATION, a corporation, including the possibility of termination of his employment which would result in further irreparable harm in loss of benefits to him and his family during his period of disability, all of which would be in violation by use of its contract of various portions of the Federal Employer's Liability Act including, but not limited to, 45 U.S.C. Section 60 thereof." (Emphasis omitted.)

On September 9, 1996, the court entered a temporary restraining order halting the investigative hearing. On September 17, 1996, following a hearing, the circuit court entered a preliminary injunction barring the investigative hearing. From this order, the railroad appeals.

On appeal, the railroad argues:

1. The circuit court erred in granting the injunction by basing its order on the threatened rights of Astorian instead of the threatened rights of the plaintiff, the Callis firm.

2. The court erred by ruling that the plaintiff had shown a probability of success on the merits on its claim for tortious interference with contract.

3. The court erred by ruling that the plaintiff would suffer irreparable injury if the railroad were permitted to proceed with its disciplinary hearing.

4. The court erred when it ruled that the plaintiff had no adequate remedy at law.

■ "Under Illinois law, the function of an appellate court in reviewing the issuance of a preliminary injunction is restricted solely to a determination of whether the trial court correctly exercised its broad discretionary powers. [Citation.] Substantive issues are to be considered only so far as is necessary to determine whether the trial court acted within the perimeters of its authority." *Board of Trustees of Community College District No. 508 v. Bakalis*, 80 Ill. App. 3d 502, 505, 400 N.E.2d 47, 50 (1980).

We will first consider the allegations of the complaint to determine the nature of the cause of action that Callis has attempted to plead. This is also essential to an understanding of the issues raised in this appeal.

■ "Pleadings shall be liberally construed with a view to doing substantial justice between the parties." 735 ILCS 5/2—603(c) (West 1996). "No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2—612(b) (West 1996).

Callis has generally alleged that an attorney-client relationship exists between the law firm and Astorian. Callis further claims that by virtue of this relationship it has certain contractual and ethical duties that will be compromised, made more difficult, or rendered impossible to perform if the investigatory hearing takes place and Astorian is unrepresented by counsel.

■ It is clear that Illinois recognizes a cause of action for interference with the professional relationship between attorney and client. This tortious inference claim is based upon interference with the attorney-client relationship irrespective of contract. It is the interference with the relationship that creates the actionable tort. A breach of contract is not an element of the action. *La Rocco v. Bakwin*, 108 Ill. App. 3d 723, 731, 439 N.E.2d 537, 543 (1982). Interference may be present if an attorney is prevented from performing his professional duties or if the performance of the professional duties is simply made more difficult or burdensome. Restatement (Second) of Torts § 766A (1979).

■ "In Illinois, a client may discharge an attorney at any time for any reason." *In re Smith*, 168 Ill. 2d 269, 293, 659 N.E.2d 896, 907 (1995). As such, an attorney representation agreement is a contract terminable at will. An action for tortious interference with a contract terminable at will is actually one for intentional interference with prospective economic advantage. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511-12, 568 N.E.2d 870, 877-78 (1991).

The railroad relies upon *George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1331 (7th Cir. 1983), for the proposition that under Illinois law an action for intentional interference with contract requires an actual breach of the contract or a termination of the contract or an act that renders performance impossible. The railroad further claims that merely making the performance more burdensome is insufficient to support the action. The railroad's reliance on *George A. Fuller Co.* is misplaced. Callis's action is not for interference with contract but, rather, for interference with prospective economic advantage. *Fellhauer*, 142 Ill. 2d 495, 568 N.E.2d 870. Even *George A. Fuller Co.* recognizes that "allegations of existing contract and breach thereof *** [are] not essential elements of this cause of action." *George A. Fuller Co.*, 719 F.2d at 1331; see also *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359, 363, 300 N.E.2d 331, 333-34 (1973) ("As the comment to Section 766 of the Restatement of Torts explains, 'The liability for inducing breach of contract is now regarded as but one instance, rather than the exclusive limit, of protection against unjustified interference in business relations' [(Restatement of Torts § 766, Comment *b*, at 52 (1939))]").

■ Until terminated, the relationship between attorney and client created by a contract terminable at will is subsisting and continues so long as the parties are satisfied. Such a relationship is sufficient to support an action for tortious interference. *Kemper v. Worcester*, 106 Ill. App. 3d 121, 435 N.E.2d 827 (1982). In cases dealing with claims of interference with the attorney-client relationship, "it is the interference with the relationship, not the contract itself, which creates the actionable tort." *Cross v. American Country Insurance Co.*, 875 F.2d 625, 629 n.1 (7th Cir. 1989).

■ To prevail in such an action, a plaintiff must plead and prove: "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer*, 142 Ill. 2d at 511, 568 N.E.2d at 878. Wrongful interference with either a contract or a professional relationship (*e.g.*, attorney-client) may occur in several ways. A person "may be physically restrained or intimidated or be excluded from the place where the contract must be performed." Restatement (Second) of Torts § 766A, Comment *g*, at 19 (1979).

■ Thus, we believe that Callis has properly and adequately pleaded a cause of action under Illinois law for intentional interference with the attorney-client relationship. The action is a species of the tort of intentional interference with prospective economic advantage.

## ISSUE I

■ The railroad first claims that the circuit court erred because the preliminary injunction order was based upon the rights of Astorian rather than the rights of Callis as Astorian's attorney. The railroad argues that where a plaintiff seeks to invoke the court's jurisdiction, (1) the plaintiff must have a personal stake in the litigation (citing *Weihl v. Dixon*, 56 Ill. App. 3d 251, 371 N.E.2d 881 (1977)), (2) the plaintiff can assert only its own legal rights, not those of a third party (citing *Helmig v. John F. Kennedy Community Consolidated School District No. 129*, 241 Ill. App. 3d 653, 610 N.E.2d 152 (1993)), and (3) plaintiff must show some injury in fact to a legally recognized interest (citing *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 545 N.E.2d 731 (1989)). We agree with each of these three propositions.

With this background, and relying on *Dixon*, the railroad asserts that Callis has no stake and no cause of action cognizable by the

circuit court. Callis responds that an attorney must represent a client with zeal and diligence (citing *In re Fox*, 122 Ill. 2d 402, 522 N.E.2d 1229 (1988)), that the attorney-client relationship places fiduciary duties on the attorney (citing *Neville v. Davinroy*, 41 Ill. App. 3d 706, 355 N.E.2d 86 (1976)), and that numerous obligations are imposed upon an attorney by the Illinois Rules of Professional Conduct (134 Ill. 2d R. 1.1 *et seq.*).

We must analyze these arguments in light of the law we have previously discussed. The case at bar concerns a law firm that claims that the defendant railroad is wrongfully interfering in the law firm's representation of its client. *Dixon*, relied upon by the railroad, concerns an attorney that attempted in his own name to assert the rights of unnamed clients rather than his own rights. The attorney in *Dixon* was held to lack standing. *Dixon*, 56 Ill. App. 3d at 255, 371 N.E.2d at 884. We agree with the *Dixon* court that the attorney in that case lacked standing. We also believe that Callis has a protectable interest in its professional relationship with Astorian.

It is true that Astorian may have a cause of action in his own right if the railroad interferes with the attorney-client relationship. We will discuss just such a situation later in this decision. But unlike the attorney/plaintiff in the *Dixon* case, Callis has a cause of action of its own. This action is brought for the vindication of Callis's rights, not Astorian's. We previously discussed in this decision the allegations of the complaint and the fact that a cause of action does exist in Illinois for interference with the attorney-client relationship. While the circuit court order did discuss the "chilling" effect that the railroad investigative hearing would have on Astorian's pursuit of his FELA case, the court also stated at the conclusion of the preliminary injunction hearing that it believed that the railroad had "an alterior [*sic*] motive in having the investigation, and that alterior [*sic*] motive, I'm quite sure has something to do with interfering with not only Mr. Astorian, but the firm, as well, in representing him." This statement by the court belies any claim that the injunction was based exclusively upon the rights of Astorian. To the contrary, the court expressly stated that the railroad's continued insistence on conducting the investigative hearing was motivated by a purpose of interfering with the attorney-client relationship between Callis and Astorian. For this reason, the first issue raised by the railroad must fail.

## ISSUE II

■ The railroad argues for its second issue that Callis failed to show the requisite likelihood of success on the merits. Multiple subissues are then raised under this single issue heading. For clarity, we

will discuss each of these claims separately. It is important to note the factors that must be established in order to obtain a preliminary injunction. The plaintiff must plead and prove: (1) that there is a clearly ascertained right in need of protection, (2) that irreparable harm will result unless the injunction is granted, (3) that there is no adequate remedy at law, and (4) that there is a likelihood of success on the merits. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 601 N.E.2d 720 (1992).

 ISSUE II(A). The railroad raises as its first subissue the claim that Callis has no likelihood of success on the merits in a claim for tortious interference with contract. The railroad argues fervently that such a claim was not pleaded nor was proof presented to support the cause of action. The railroad states that Callis disavowed at the hearing in the trial court any cause of action for interference with contract. The railroad then dissects the elements of the cause of action for intentional interference with contract and argues that the pleadings in this case fail to plead the requisite elements. Next, it claims that in any event the evidence failed to show that any contract was breached or terminated.

As explained previously, because attorney representation agreements are terminable at will, the cause of action at issue in this case is not for interference with contract but, rather, for interference with prospective economic advantage. *Fellhauer*, 142 Ill. 2d 495, 568 N.E.2d 870. The railroad simply failed to address the correct cause of action. Instead of the plaintiff failing to plead adequately, the railroad failed to address the applicable cause of action. Instead of the plaintiff's cause of action failing due to the absence of evidence that the contract was breached or terminated, the railroad's argument must fail because neither breach nor termination is an element of plaintiff's cause of action. *Fellhauer*, 142 Ill. 2d 495, 568 N.E.2d 870; *Cross*, 875 F.2d 625.

ISSUE II(B). The railroad next claims that it was unaware that Astorian was represented by counsel at the time the initial investigative hearing was set and that this negates any claim that it intentionally interfered with Callis's contract. Assuming for the sake of discussion that this is true, the railroad knew on or about September 4, 1996, of Callis's representation and persisted in the demand to conduct the hearing. Callis claims that the continued insistence on the disciplinary hearing constitutes an interference with the attorney-client relationship and that if the hearing occurs and Astorian is unrepresented by counsel, Callis's performance of his obligations as an attorney will be impaired or prevented. As stated previously, Comment *g* to section 766A of the Restatement (Second) of

Torts expressly provides that an exclusion from the place of performance is one way in which interference may occur. This is a factual matter for the trial court to decide. In reviewing the grant of a preliminary injunction, we may consider substantive issues only to the extent necessary to determine if the trial court abused its discretion. *Bakalis*, 80 Ill. App. 3d at 505, 400 N.E.2d at 50. We find no abuse of discretion.

We must pointedly note at this time that, pursuant to Supreme Court Rule 23(e), unpublished orders of the court are not precedential and "may not be cited by any party" except for purposes not pertinent here. 166 Ill. 2d R. 23. This rule was cavalierly violated in arguing points II(A) and II(B). We trust that this will not recur.

ISSUE II(C). The railroad argues next that its conduct is privileged and nonactionable. It claims that it had a legally protected right under the provisions of the collective bargaining agreement (Agreement) and that its actions were "reasonable." The railroad cites *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672 (1989), for the proposition that certain actions are privileged even if they do interfere with another's contractual or professional relations. *Connaughton v. Gertz*, 94 Ill. App. 3d 265, 418 N.E.2d 858 (1981), is cited for the proposition that any "reasonable" means may be used by a party seeking to exercise rights under a valid preexisting contract. If the action taken is reasonable, it will be deemed privileged. We have no disagreement with these propositions. The question is, however, whether an attempt to interfere with an attorney's handling of a case on behalf of his client, who is protected by the terms of the FELA, is the type of action that should be deemed "reasonable" and privileged. Stated differently, should an alleged tortfeasor/defendant be granted a privilege to engage in an activity that is designed to both intimidate the client and prevent the client's attorney from performing a basic duty, *i.e.*, being present when his client is questioned by the alleged tortfeasor/defendant? The answer was obvious to the trial court. No!

We find no abuse of discretion in the trial court's conclusion that such conduct is neither "reasonable" nor privileged.

ISSUE II(D). The final subissue raised is a claim that the plaintiff's cause of action is preempted under the terms of the Railway Labor Act (45 U.S.C. § 151 *et seq.* (Supp. 1992)). The railroad argues that exclusive jurisdiction to resolve "minor disputes" is vested in the National Railroad Adjustment Board (Board). See 45 U.S.C. § 153 (Supp. 1992). It further claims that this exclusive jurisdiction includes the interpretation of the Agreement, and it cites *Consolidated R. Corp. v. Railway Labor Executives' Ass'n*, 491 U.S.

299, 105 L. Ed. 2d 250, 109 S. Ct. 2477 (1989). Any dispute that implicitly or expressly involves an incident of the employment relationship is claimed to fall exclusively under the jurisdiction of the Board and the Agreement. According to the defendant, the action filed by Callis will require an interpretation of the Agreement, and the action is therefore preempted. See *Leu v. Norfolk & Western Ry. Co.*, 820 F.2d 825 (7th Cir. 1987). We disagree. In a virtually identical case, the same defendant as in this case, represented by the same attorneys as in this case, made the same argument in the United States District Court for the Southern District of Illinois. *Pratt, Bradford & Tobin, P.C. v. Norfolk & Western Ry. Co.*, 885 F. Supp. 1126 (S.D. Ill. 1994). In that case the court ruled:

> "[T]he [Railway Labor Act] preempts only if the dispute arises out of the interpretation of a collective bargaining agreement. See *Atchison, Topeka, and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562-63, 107 S. Ct. 1410, 1414, 94 L. Ed. 2d 563 (1987); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). \*\*\*
>
> \*\*\* Plaintiff does not argue that the collective bargaining agreement confers a right to have attorneys present during company hearings. Notably, the parties agree as to the meaning and interpretation of the collective bargaining agreement. Plaintiff asserts that enforcement of the agreement violates the FELA, 45 U.S.C. § 60, and constitutes a tortious interference with contract. Section 60 provides criminal penalties against persons who impede the flow of information concerning a FELA injury claim and the crucial element of a tortious interference with contract claim is that plaintiff must prove that the agreement's prohibition on attorneys is unjustified. *HPI Health Care Services v. Mt. Vernon Hosp.*, 131 Ill. 2d 145, 137, Ill. Dec. 19, 23-24, 545 N.E.2d 672, 676-77 (1989). These claims do not require interpretation of the collective bargaining agreement[;] therefore the [Railway Labor Act] does not preempt." *Pratt, Bradford & Tobin, P.C.*, 885 F. Supp. at 1129.

The railroad cites cases from various federal courts of appeal for the proposition that Callis's cause of action is preempted by the Railway Labor Act. What the railroad fails to cite in either its opening brief or its reply brief is the United States Supreme Court decision in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994). Moreover, the *Hawaiian Airlines* case was never considered by any of the authorities relied on by the railroad. This omission is understandable as we will explain.

In *Hawaiian Airlines*, a mechanic discovered a mechanical defect that could cause a landing gear to fail. The mechanic recommended

that the part be replaced. A supervisor ordered the part repaired instead of replaced, and the plane flew as scheduled. The mechanic refused to sign the maintenance record to certify as required by federal regulations that the repair was properly performed. The mechanic was suspended pending a disciplinary hearing on a charge of insubordination in violation of the collective bargaining agreement. (This is the same charge made against Astorian.) The mechanic then notified the Federal Aviation Administration (FAA). The next day, the FAA seized the part. Following a disciplinary hearing, the mechanic was terminated. The mechanic initially appealed under the grievance procedure but then abandoned the appeal, and he filed suit under both Hawaii state law, alleging wrongful termination, and federal law. The trial court dismissed the entire action at the request of the airline, ruling that the Railway Labor Act preempted the action. The Hawaii Supreme Court reversed, and the United States Supreme Court granted *certiorari. Hawaiian Airlines*, 512 U.S. at 250, 129 L. Ed. 2d at 209-10, 114 S. Ct. at 2243.

The Supreme Court began its discussion by pointing out that the Railway Labor Act was extended in 1936 to cover the airline industry. 512 U.S. at 248, 129 L. Ed. 2d at 208, 114 S. Ct. at 2241. The issue as framed by the Supreme Court was as follows:

"The question in this case is whether an aircraft mechanic who claims that he was discharged for refusing to certify the safety of a plane that he considered unsafe and for reporting his safety concerns to the Federal Aviation Administration may pursue available state-law remedies for wrongful discharge, or whether he may seek redress only through the [Railway Labor Act's] arbitral mechanism." 512 U.S. at 248, 129 L. Ed. 2d at 208, 114 S. Ct. at 2241.

The court ruled that purely factual questions about an employee's conduct or the motives or conduct of an employer do not require any interpretation of the collective bargaining agreement. 512 U.S. at 262, 129 L. Ed. 2d at 217, 114 S. Ct. at 2248. Preemption occurs only if "a state-law claim is dependent on the interpretation of a [collective bargaining agreement]." 512 U.S. at 262, 129 L. Ed. 2d at 217, 114 S. Ct. at 2249. Because the mechanic's claims required only a purely factual determination of a retaliatory motive for the discharge, the state-law claims were not preempted. 512 U.S. at 266, 129 L. Ed. 2d at 220, 114 S. Ct. at 2251.

"[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished \*\*\*." *Livadas v. Bradshaw*, 512 U.S. 107, 124, 129 L. Ed. 2d 93, 110, 114 S. Ct. 2068, 2078 (1994).

In *Balzeit v. Southern Pacific Transportation Co.*, 569 F. Supp. 986 (N.D. Cal. 1983), a railroad employee with a FELA claim was ordered by the employer to fire his attorneys. The employee filed suit under state law against the railroad for emotional distress. In denying a motion to dismiss based on preemption, the court ruled that because a fundamental state public policy was at issue, no preemption occurred.

From these authorities it is clear that Callis's state-law claim for interference with the attorney-client relationship is not preempted.

## ISSUE III

For its third issue, the railroad alleges that Callis failed to plead or prove irreparable harm. Further, it claims that the court failed to find irreparable harm. No authority is cited for this proposition. The issue is waived. 134 Ill. 2d R. 341(e)(7).

In any event, as discussed earlier, the pleadings and findings of the court belie this claim. The claim is without merit.

## ISSUE IV

Finally, the railroad argues that the court erred in finding that there was no adequate remedy at law. It claims that if some harm is ultimately proven, money damages are available. There is no citation to the record for this claim, and no authority is cited. It is waived. 134 Ill. 2d Rs. 341(e)(6), (e)(7).

In any event, the fact that an alternative remedy is available does not mean that the remedy is adequate. The alternative remedy at law to be adequate must be clear, complete, and as effective as the equitable remedy. *Alexander v. Standard Oil Co.*, 53 Ill. App. 3d 690, 368 N.E.2d 1010 (1977). We find no abuse of discretion in the trial court's ruling.

## CONCLUSION

For the foregoing reasons, the order of the circuit court granting the plaintiff, Callis, a preliminary injunction is affirmed.

Affirmed.

KUEHN, P.J., and GOLDENHERSH, J., concur.